IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHOU THAO, | CASE NO. CV-F-04-6162 LJO |
| Plaintiff, | **DECISION ON SOCIAL SECURITY COMPLAINT** |
| vs. | (Docs. 17, 20.) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Khou Thao ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision that plaintiff is not disabled and is ineligible for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1381d. Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate Judge, and by a January 31, 2005 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all proceedings. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further proceedings.

# BACKGROUND

## Plaintiff's Personal Background

Plaintiff is age 41, of Hmong heritage and a mother of seven children, lacks formal education and work experience, and is unable generally to communicate in English. (AR 17, 72. 79.)

## Administrative Proceedings

### *Plaintiff's Prior SSI Application*

On November 18, 1999, plaintiff filed her prior SSI application (not at issue here) to allege disability since March 18, 1999, primarily based on depression and back and abdominal pain. (AR 43.) After the Social Security Administration ("SSA") denied plaintiff's claim initially and on reconsideration, plaintiff proceeded to an April 12, 2001 ALJ hearing. With his July 23, 2001 decision, the ALJ found that plaintiff lacks an impairment or combination of impairments which is more than a slight abnormality or a minimal effect on ability to work and that plaintiff is not disabled. (AR 46-47.)

### *Plaintiff's Current SSI Application*

On September 20, 2001, plaintiff protectively filed her current SSI application (at issue here) to claim disability since March 5, 1996 due to major depression, ulcer, back pain, headaches, and sleep difficulty. (AR 68, 73.) With its December 13, 2001 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined that plaintiff's condition is not severe enough to prevent her to work. (AR 56.)

On February 2, 2002, plaintiff filed her Request for Reconsideration to claim she remains disabled and unable to work. (AR 60.) With its April 24, 2002 Notice of Reconsideration, SSA denied plaintiff's claim and again determined that plaintiff's condition does not prevent plaintiff to perform work related activities. (AR 62.)

On June 7, 2002, counsel was appointed for plaintiff. (AR 38.) On June 13, 2002, plaintiff filed her Request for Hearing by Administrative Law Judge to claim she is "totally disabled." (AR 66.) With his January 21, 2003 letter, plaintiff's counsel asked the ALJ to "consider a fully favorable decision for a CLOSED PERIOD from September 20, 2001, through November 20, 2002. By that time, the medication had improved her condition and she told the doctor." (AR 9.) After a March 26, 2003 hearing, the ALJ issued his April 10, 2003 decision to conclude that plaintiff has the residual functional

1  capacity to perform simple one- and two-step job instructions on a sustained, independent basis and is
2  not disabled.  (AR 20-21.)  The ALJ determined that the July 23, 2001 ALJ decision is res judicata
3  through that date and that the unadjudicated period runs from July 24, 2001.  (AR 17.)

Plaintiff submitted to SSA's Appeals Council her April 22, 2003 Request for Review of Hearing Decision to seek review of the ALJ's decision.  (AR 12.)  On June 25, 2004, the Appeals Council denied plaintiff's request for review to render the ALJ's April 10, 2003 decision as the Commissioner's final decision subject to this Court's review.  (AR 3.)

**Medical History And Records Review**

*Kings Winery Medical Clinic*

During 1998-2002, plaintiff treated at Kings Winery Medical Clinic to address stomach aches, headaches, gynecological needs, chronic cough, back, hand, abdominal, pelvic and hip pain, dizziness, fatigue, sore lips and throat, foot puncture, appetite loss and depression.  (AR 108-111, 113-115, 119, 121, 123, 157, 158 161, 166-168, 173.)  On September 26, 2000, plaintiff refused a chest x-ray.  (AR 121.)  December 13, 2000 notes reflect plaintiff was doing well with her medications.  (AR 119.)  On April 4, 2001, plaintiff stated that she does not perform housework and that her husband and children perform household chores and cooking.  (AR 113.)  Plaintiff also stated that she stays in bed all the time due to stomach pain.  (AR 113.)

April 14, 2001 notes reflect plaintiff's inability to heel or toe walk due to forefoot pain.  (AR 113.)  Plaintiff was able to crouch at her knees and bend at her knees to take off shoes and pick up a dropped object.  (AR 113.)  No pain was demonstrated on such movements.  (AR 113.)  On November 28, 2001, plaintiff noted that she felt depressed due to marital problems and was told by her husband to leave the home.  (AR 110.)  Plaintiff further noted that she experienced a head injury after she stood up and struck her head against a wood fence post.  (AR 110.)

*Fresno County Mental Health*

During 2000-2002, plaintiff treated with Fresno County Mental Health.  February 8, 2001 notes reflect that plaintiff's SSI is pending and is a new stressor.  (AR 133.)  The notes further reflect good medication compliance with effectiveness and no side effects.  (AR 133.)  The treating physician noted plaintiff's affect within normal limits, intact learning ability, cognition and sensory, above average IQ,

and absence of formal disorder, intrusiveness, hallucinations, delusions, suicidal or homicidal thoughts or impulse control. (AR 133.) On May 17, 2001, plaintiff reported that she "feels good about her medication . . . feels calmer, sleeps better [and is] less depressed." (AR 131.) On July 24, 2001, plaintiff denied any new acute problems. (AR 129.) The notes reflect plaintiff's neat and appropriate appearance, organized thoughts and intact judgment and insight. (AR 129.) Plaintiff was assessed as stable and compliant with medication with no side effects. (AR 129.) On September 19, 2001, plaintiff complained of decreased sleep but is able to sleep with medication and to care for her basic needs. (AR 128.) Notes reflect plaintiff's fair grooming and hygiene, fair judgment and insight, and absence of anxiety or agitation. (AR 128.) According to the notes, plaintiff responded fairly to medications and was compliant with medications with no side effects. (AR 128.)

November 14, 2001 notes reflect that plaintiff regretted not taking her medications because they caused headaches and that plaintiff is able to care for her basic needs. (AR 127.) The notes further reflect plaintiff's fair grooming and hygiene, fair judgment and insight, and appropriate affect. (AR 127.) Plaintiff was mildly depressed and not responding well. (AR 127.) Plaintiff was started on Remeron to assist with sleep. (AR 127.)

On January 9, 2002, plaintiff reported a bad headache for which she took Tylenol. (AR 126.) According to the notes, plaintiff slept better with Remeron with no medication side effects and is able to care for her basic needs. (AR 126.) The notes reflect plaintiff's adequate grooming and hygiene, goal-oriented speech, and fair judgment and insight. (AR 126.) On July 31, 2002, plaintiff reported feeling depressed but did not want to change her medications. (AR 179.) The notes reflect plaintiff's mildly depressed effect, intact judgment and insight, no medication side effects, and medication compliance, no acute or new problems, and no medication side effects. (AR 179.) On September 25, 2002, plaintiff discussed troubles with her husband and sister. (AR 178.) Plaintiff responded fairly with her current medications with no side effects. (AR 178.) On November 20, 2002, plaintiff drove herself to the clinic and complained of marital problems. (AR 177.) Plaintiff's judgment and insight were intact. (AR 177.) Plaintiff experienced no medication side effects and was compliant with her medication. (AR 177.) Plaintiff's treatment focused on depression, nightmares and sleep difficulty. (AR 175.)

*Psychiatric Review Technique*

Ernest Wong, M.D. ("Dr. Wong"), completed a December 11, 2001 Psychiatric Review Technique to note the presence of a non-severe impairment of depression. (AR 141, 144.) Dr. Wong noted no restriction in daily living activities and mild difficulties in maintaining social functioning and concentration, persistence and pace. (AR 151.) Dr. Wong noted plaintiff's ability to perform self-care, fair grooming and hygiene, mild, blunted but pleasant affect, intact orientation, fair insight and judgment, psychomotor activity within normal limits, and fair response to and compliance with medications. (AR 153.) Archimedes Garcia, M.D., a psychiatrist, and Glenn Ikawa, M.D., agreed with Dr. Wong's assessment. (AR 141.)

*Maximo A. Parayno, Jr., M.D., Consultative Psychiatrist*

Plaintiff's counsel arranged for Maximo A. Parayno, Jr., M.D. ("Dr. Parayno"), a psychiatrist, to conduct a December 21, 2002 psychiatric evaluation "to assess her eligibility for disability benefits." (AR 180.) Plaintiff's chief complaints were depression, insomnia, feeling weak and nightmares. (AR 180.) Plaintiff explained she witnessed and escape from warfare in Laos and lived about eight years in a Thai refugee camp before coming the United States more than ten years ago. (AR 180.) Plaintiff reported marital problems, including her husband's departure to Thailand "to possibly find a second wife." (AR 180-181.) According to Dr. Parayno, plaintiff's "grooming was somewhat marginal," her "hair was uncombed although her dress was reasonably clean," her "mood was definitely depressed and her affect was flat." (AR 181.) Plaintiff felt "hopeless and worthless," and her judgment and insight were fair. (AR 181.)

Dr. Parayno diagnosed posttraumatic stress disorder, delayed, and major depression, recurrent, moderate to severe without psychotic features. (AR 182.) Dr. Parayno assigned a 45-50 Global Assessment of Functioning ("GAF"). Dr. Parayno assessed that abandonment by plaintiff's husband "triggered her into deep depression. On mental status examination, she was disoriented to time and place. Her memory and concentration and attention span were impaired based on the digit span test, recall of 5 items and her lack of capacity to perform even simple calculations. From the above, it is apparent she is not capable of engaging in any substantial gainful activity and meets listing 12.04 and 12.06 of the Disability Evaluation code." (AR 183.)

*Medications*

Plaintiff's medications have included Mapap 500 mg, Premeron 30 mg, and pink bismuth. (AR 106.)

**Plaintiff's Activities And Testimony**

*Reports And Questionnaires*

Plaintiff completed an undated Disability Report Adult to note her inability to speak, read or write English. (AR 72.) Plaintiff speaks Hmong. (AR 72.) Plaintiff is weak physically and mentally and unable to concentrate due to depression, ulcer, back pain, headache, low blood and sleep difficulty. (AR 73.) These conditions first bothered plaintiff on January 6, 1972. (AR 73.) Plaintiff has never worked and is a mother of seven children. (AR 73, 74.) Plaintiff attended English as second language classes. (AR 79.)

A SSA interviewer completed a September 20, 2001 Disability Report – Field Office to note plaintiff was appropriately groomed and had an "alert appearance. . . . No problems were noticeable." (AR 84.)

Plaintiff completed an undated Daily Activities Questionnaire to note that she lives at home with her family. (AR 92.) Plaintiff is weak and depressed and able to perform only light housekeeping, such as dishes. (AR 92.) Plaintiff cannot sleep "at all," has a bad ulcer, headaches, dizziness, back and leg pain, and depression. (AR 92.) Plaintiff "hardly" combs her hair, bathes once or twice a week, and wears the same clothes for many days. (AR 92.) Plaintiff's husband and children prepare meals. (AR 93.) Once or twice a week, plaintiff cooks simple rice soup but cannot eat much because of her ulcer. (AR 93.) Plaintiff's husband and children, not plaintiff, shop. (AR 93.) Plaintiff is unable to perform regular house work and sometimes does "a few dishes." (AR 93.) Plaintiff is weak and unable to bend, lift and concentrate. (AR 93.) Every two or three weeks, plaintiff's husband take her to stores for food shopping. (AR 94.) Plaintiff's husband drives because plaintiff is forgetful and weak and cannot concentrate. (AR 94.) Plaintiff needs her husband to carry "heavy stuff." (AR 94.) Plaintiff cannot tolerate noises which give her headaches. (AR 95.) Plaintiff "hardly" visits anyone. (AR 95.) On most days, plaintiff remains home and lies on the sofa. (AR 95.) Plaintiff is unable to concentrate, is forgetful and depressed, and feels worthless. (AR 96.) Plaintiff is unable to "bend much," "carry heavy stuff,"

"stand up long," or "sit long." (AR 96.)  Plaintiff has never worked and is a "house wife with 7 children." (AR 96.)

Chong Yee Lor, plaintiff's husband, completed a November 9, 2001 Daily Activities Questionnaire (Third Party Information) to note that plaintiff lives at home with her family.  (AR 86.) Plaintiff experiences sleep difficulty due to headaches, dizziness and back and leg pain.  (AR 86.) Plaintiff takes a bath once or twice a week, does not comb her hair, and wears the same clothes for a "long time."  (AR 87.)  Plaintiff's husband helps prepare daily meals and grocery shops.  (AR 87.) Plaintiff's husband and son perform household chores because plaintiff cannot "bend much."  (AR 88.) Plaintiff leaves her home two or three times a month to grocery shop.  (AR 88.)  Plaintiff has a driver's license and drives a car.  (AR 88.)  Plaintiff is unable to stand long due to headaches.  (AR 89.)  Plaintiff does not like to visit anyone, stays home and lies down.  (AR 89-90.)  Plaintiff is unable to remember much and always forgets.  (AR 90.)  Plaintiff cries and worries and does not eat.  (AR 91.)

Plaintiff completed a January 29, 2001 Reconsideration Disability Report to note that she is "very depressed" and has become "weak and weaker."  (AR 98.)  Plaintiff cannot even stand up to "wait for my rice soup to be totally cook[ed]."  After plaintiff filed her SSI application, her physician placed only a restriction to avoid oily or spicy food due to plaintiff's ulcer.  (AR 98.)  Plaintiff his "becoming more and more depressed and very weak" and remains "at home most of my days." (AR 100.)

### *Plaintiff's ALJ Hearing Testimony*

Plaintiff testified at the March 26, 2003 ALJ hearing that she is a legal United States resident, not a citizen.  (AR 187.)  Plaintiff was born in Laos and has formal education limited to a short period of adult school in the United States.  (AR 187.)  Plaintiff is able to speak "a little bit" of English but is unable to read or write in English.  (AR 187-188.)  Plaintiff has a driver's license but does not drive because of her depression.  (AR 188.)

Plaintiff treats at Fresno County Mental Health where she receives medication which helps her to sleep and forget her depression.  (AR 189, 190.)  Plaintiff believes her depression is worsening.  (AR 189.)  Medication helps "a little bit" before wearing off.  (AR 190.)

On her worst days, plaintiffs stays isolated in her bedroom.  (AR 190.)  On a good day, plaintiff comes out and talks to her kids.  (AR 190.)  During the past five years, plaintiff has not attended a New

Year celebration, has not gone to the store alone, and once her husband took her to the park. (AR 190-191.) Plaintiff goes to the store with others. (AR 191.) Plaintiff was too depressed to attend her eldest child's high school graduation. (AR 192.)

### The ALJ's Findings

In his April 10, 2003 decision, the ALJ identified the specific issue as whether plaintiff is under a disability, defined under the Act as the inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. (AR 17.) In concluding plaintiff is not entitled to SSI, the ALJ found:

1. Plaintiff's depressive disorder is a "severe" impairment but does not meet or medically equal an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

2. Plaintiff's allegations regarding her limitations "are not totally credible or fully supported."

3. Plaintiff has the residual functional capacity to perform simple one- and two-step job instructions on a sustained and independent basis and has no exertional limitations.

4. Plaintiff is not disabled considering the range of work at all levels which plaintiff is functionally capable to perform and using section 204.00 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2. (AR 20.)

### DISCUSSION

### Standard Of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

///

///

contrary to treating physician's findings).[1]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  "A decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete and detailed objective medical reports of her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). Plaintiff must furnish medical and other evidence about plaintiff's medical impairments.  20 C.F.R. §§ 404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that shows that you are blind or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical evidence to determine whether you are disabled or blind.  You are responsible for providing that evidence.")

Here, plaintiff claims disability since March 5, 1996 due to major depression, ulcer, back pain,

---

[1] "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

9

headaches and sleep difficulty. (AR 68, 73.) As discussed below, this Court finds that the ALJ properly evaluated the evidence and that his conclusion that plaintiff is not disabled is based on proper legal standards and substantial evidence.

With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's April 10, 2003 decision.

### **Plaintiff's Request For Closed Period Of Disability**

Plaintiff argues that the ALJ did not consider a closed period of disability, running (presumably) from her September 20, 2001 SSI application to July 31, 2002, when plaintiff admits "the depression was mild, and the medication was working without side effects." The Commissioner responds that the ALJ properly evaluated the evidence as a whole to determine that plaintiff was not disabled for a continuous 12 months.

The ALJ properly noted the "scant medical evidence shows the claimant has been diagnosed and treated for depression since December 2000, mainly with medications" and the absence of "developmental disabilities or physical health disorders affecting the claimant's mental health." (AR 18.) The medical record supports the ALJ's assessments. (AR 119, 126, 128, 129, 131, 133, 141, 144, 151, 153, 177-179.) *See Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122, 116 S.Ct. 1356 (1996) (claimant has the burden to prove she has a qualified impairment that meets the 12-month duration requirement); *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (existence of an emotional disorder "is not per se disabling," especially if "amendable to control.")

February 8, 2001 notes reflect plaintiff's good medication compliance with effectiveness and no side effects. (AR 133.) On May 17, 2001, plaintiff reported that she "feels good about her medication . . . feels calmer, sleeps better [and is] less depressed." (AR 131.) On July 24, 2001, plaintiff was assessed as stable and compliant with medication with no side effects. (AR 129.) On September 19, 2001, plaintiff was assessed as responding fairly to current medications and compliant with no side effects. (AR 128.) January 9, 2002 notes reflect plaintiff's sleeping improvement with Remeron and absence of medication side effects. (AR 126.) On July 31, 2002, plaintiff did not want to change her medication. (AR 179.) On September 25, 2002, plaintiff responded fairly with her medication with no side effects. (AR 178.) As of November 20, 2002, plaintiff was compliant with her medication and

experienced no side effects. (AR 177.)

The ALJ reviewed Dr. Parayno's assessment and properly questioned it:

> The Administrative Law Judge is not totally accepting Dr. Parayno's assessment of the claimant's restrictions. Dr. Parayno determined the claimant's global assessment of functioning (GAF) to be 45 to 50 (Exhibit 6F, p. 3). It must be noted that acculturation issues are factored into GAF assessments, which by definition include "psychological, social, and occupational functioning." Thus, there may not always be a clear singular causal connection between the severity of the mental impairment and the GAF assessment. In this particular case, the claimant is non-English speaking with a limited education and no work experience in the United States. These non-medical factors alone would lead to a generally low GAF. Therefore, the Administrative Law Judge finds the claimant's GAF does not necessarily demonstrate the severity of her medical impairment. (AR 18.)

The ALJ properly cast doubt on Dr. Parayno's assessment in that plaintiff "underwent this examination not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for this current appeal." (AR 18.) An ALJ may question a physician's credibility when his/her opinion "had been solicited by the claimant's counsel." *Saelee v. Chater*, 94 F.3d 520, 522-523 (9th Cir. 1996); *see Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988).

Plaintiff failed to meet her burden to prove disability. The ALJ did not err regarding a closed period of disability.

### Development Of Record

Plaintiff faults the ALJ for failing to obtain a consultative examination to develop the mental health record. The Commissioner responds that the ALJ did not need to a consultative examination in that all required information was readily available from plaintiff's medical sources which indicated that plaintiff responded well to medication and was stable.

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Here, there is no suggestion of an ambiguous or inadequate record. The ALJ fully addressed Dr. Parayno's opinion and adequately discounted it. Plaintiff fails to demonstrate grounds to further develop the record.

### Plaintiff's Credibility

Plaintiff challenges the ALJ's evaluation of plaintiff's credibility. The Commissioner contends that the ALJ properly rejected plaintiff's credibility.

11

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959. A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Moreover, "the ALJ is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c).

*See also* S.S.R. 96-7p.[2]

The ALJ found that plaintiff's "allegations regarding her limitations are not totally credible or

---

[2] Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

fully supported." (AR 20.) The ALJ focused on plaintiff's alleged limitations and did not discredit her in total. Despite plaintiff brief hearing testimony, the ALJ noted the specific inconsistency between her testimony that medications do not help and the numerous medical notations that plaintiff responded well to and was compliant with medications and stable. (AR 18.) The ALJ noted plaintiff testified that she does not drive but that November 20, 2002 treatment notes reflect plaintiff drove. (AR 19.) Plaintiff's husband completed a Daily Activities Questionnaire (Third Party Information) to note that plaintiff drives. (AR 88.) The ALJ further noted the inconsistency between Dr. Parayno's comment of plaintiff's marginal grooming and the persistent medical notations that plaintiff cared for her basic needs and had adequate grooming and hygiene. (AR 19.) The medical notations further contradict plaintiff's claim in her Daily Activities Questionnaire that she "hardly" combs her hair, bathes infrequently and wears the same clothes for many days. (AR 92.) The ALJ further noted SSA staff observations that plaintiff was appropriately dressed and that plaintiff testified she shops with her family. (AR 19, 84.) Plaintiff's broad comments fail to demonstrate error regarding plaintiff's credibility.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded plaintiff is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further proceedings. This Court DIRECTS the Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Khou Thao and to close this action.

IT IS SO ORDERED.

**Dated:   December 1, 2005**              **/s/ Lawrence J. O'Neill**
66h44d                                     UNITED STATES MAGISTRATE JUDGE